# CROCKER v SCHOOL BOARD OF PUTNAM COUNTY
## Case No. 86-2232E
State of Florida, Division of Administrative Hearings
September 9, 1986

## APPEARANCES OF COUNSEL

**Dianne Crocker,** pro se.

**William L. Townsend, Jr., Walton, Townsend and Holmes,** for respondent.

## OPINION

ROBERT T. BENTON II, Hearing Officer.

This matter came on for final hearing in Palatka, Florida before Robert T. Benton, II, Hearing Officer of the Division of Administrative Hearings on July 28, 1986. The Division of Administrative Hearings

received the transcript of proceedings on August 29, 1986. The parties filed post-hearing submissions on August 29, 1986, and September 3, 1986.

By letter dated July 16, 1986, petitioner reported that a "staffing committee and I do not agree on the staffing done on March 13, 1986 or that the Detroit Test of Learning Aptitude II done on 12-13-85 is valid" and requested a hearing "so that I can present my point of view."

Thereafter the parties entered into a prehearing stipulation in which they agreed that their dispute boiled down to the following

### ISSUE

Whether Marshall Crocker qualifies as a student eligible for specific learning disability classification?

### FINDINGS OF FACT

Respondent concedes that Marshall Crocker's academic achievement is significantly below his level of intellectual functioning; and that his learning problems are not primarily due to handicapping conditions other than specific learning disabilities; and that general educational alternatives have proven ineffective. In fact, Marshall, who is sixteen year old and was in eighth grade in the 1985-86 school year, has dropped out of school. His mother is upset about this because Marshall is bright enough—his full scale I.Q. is 108 and his performance I.Q. is 118, Petitioner's Exhibit No. 4; and she believes he could succeed academically with special instruction. She stated, although not under oath, that the family has a history of dyslexia. See Petitioner's Exhibit No. 7, p. 2.

On February 24, 1986, a clinical psychologist at Shands Teaching Hospital performed a neuropsychological evaluation on Marshall. In a report two days later, the investigators concluded:

Marshall's scores on the Woodcock-Johnson Psycho-Educational Battery place him at the 11-8 age (21st percentile) and 6.4 grade equivalent (30th percentile) for reading, the 13-4 age (32nd percentile) and 8.1 grade (41st percentile) for mathematics, and the 10-4 age (14th percentile) and 5-2 grade (13th percentile) for written language. Although his scores in all three areas were below those expected from his WISC-R performance, he showed the greatest deficits in the areas of reading and written language.

Memory. Marshall's performance on all verbal and nonverbal memory tests were within normal limits. He achieved a memory

276

quotient of 104 on the Wechsler Memory Scale (WMS) which is expected for his average IQ. His immediate recall of prose passages (WMS Logical Memory) was average and there was only a 28 percent loss of information with a 90 minute delay. He showed a normal learning curve on a paired associate task and word lists (WMS Associate Learning, Rey Auditory Verbal Learning Test).

His nonverbal memory was above average. He obtained a virtually perfect performance on immediate (10 seconds) and delayed (30 minutes) recall of four geometric figures (WMS Visual Reproduction). His delayed (20 minute) recall of a complex geometric design (Rey Osterreith Visual Reproduction Test) was at the 90th percentile.

Language and Related Functions. Marshall spoke fluently throughout the evaluation. He exhibited perfect performances on all aphasia tests administered (Western Aphasia Battery Repetition, Sequential Commands, Praxis subtests). His ability to name common line drawings was within normal limits. A writing sample revealed that he could spontaneously write letters and words, but that his grammar and spelling are poor (Boston Aphasia Exam Cookie Theft subtest). This performance was consistent with Marshall's scores on the Woodcock-Johnson Psycho-Educational Battery.

Marshall's personal and extrapersonal left-right orientation was within normal limits (Benton Parietal Lobe Battery). Finger gnosis and localization were also normal.

Visuoperceptual and Somatosensory Functions. Marshall exhibited normal visuoperceptual abilities. H[is] reproduction of a complex geometric figure was well organized, accurate, and efficiently performed (Rey Osterreith Visual Reproduction Test). Earlier administration of the WISC-R Block Design and Picture Completion subtests suggested that his ability to correctly reproduce spacial designs with blocks and complete simple puzzles was in the average range. Marshall's ability to mentally integrate parts into a whole object was also average (Hooper Visual Organization Test). His scanning and tracking ability was slightly impaired for serial numbers (Trials A) and significantly impaired for changing sets (Trials B). These results appeared to have been due to slow speed rather than numerous errors.

In general, Marshall did not appear to exhibit impairments in neuropsychological development and performed well in all area with the exception of language and spelling skills. His average level of intellectual functioning together with his below average performance

on reading and written language tests is suggestive of a learning disability. His level of performance in this area together with his mother's report of a history of reading difficulties suggest that a failure to provide intervention at an early age may have contributed to his present academic difficulties. The clinical interview together with test results suggest that Marshall's recent behavior problems may be related to his inability to perform well at school and repeated experiences with failure.

After receipt of the report from Shands, Robert Dismuke, a psychologist in respondent's employ, spoke to Shands' Eileen Fernell, particularly with reference to Marshall's eligibility for placement as a specifically learning disabled student. They agreed that no standardized test demonstrated a processing deficit of the kind contemplated by Rule 6A-6.3018(2)(a), Florida Administrative Code. Respondent's Exhibit No. 2 corroborates this.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the formal administrative proceedings required when school authorities and parents disagree on whether students should be placed in exceptional educational programs. Section 230.23(4)(m)4, Florida Statutes (1985) and Rule 6A-6.3311(5)(a), Florida Administrative Code.

The parties are to be commended for the careful job they have done in defining the precise area of disagreement between them. They have stipulated that Marshall meets all criteria for exceptional educational placement, except the criteria set out in Rule 6A-6.3018(2)(a), Florida Administrative Code, which provides:

> (2) Criteria for eligibility. A student is eligible for special programs for specific learning disabilities if the student meets all of the following criteria as determined by the procedures prescribed in Rules 6A-6.331 and 6A-6.341, F.A.C.

> (a) Evidence of a disorder in one (1) or more of the basic psychological processes. Basic psychological process areas include visual, auditory, motor and language processes.

> 1. Documentation of process disorder must include one (1) standardized instrument in addition to the instrument used to determine the student's level of intellectual functioning.

> 2. In addition, a district may establish criteria for the use of more than one (1) instrument to determine a process disorder and other criteria which will assist in determining a process disorder.

Rule 6A-6.3018(2)(a), F.A.C.

278

As the party seeking to change the status quo, petitioner bears the burden to show entitlement under the rule. *E.g, School Board of Pinellas County, v. G.M.*, No. 82-3358E (DOAH; April 28, 1983) Marshall has not been placed in an exceptional education program to this point. It is Marshall or, technically, his mother on his behalf, who seeks a change in placement, not the school board. Petitioner has not met her burden of proof. The evidence did not contain any standardized instrument documenting a process disorder or show why the results of tests that were offered should not be accepted.

It is accordingly,

ORDERED:

Respondent need not place Marshall Crocker as a specifically learning disabled student.

DONE AND ENTERED this 9th day of September, 1986, in Tallahassee, Florida.